160

ESTHER MILLS *vs.* RALPH WATERMAN.

MAY 20, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This is an action of trespass on the case for negligence to recover damages for personal injuries sustained by the plaintiff as a result of being struck by the defendant's automobile. It was tried in the superior court where a jury returned a verdict for the defendant. Thereafter the trial justice granted the plaintiff's motion for a new trial and the case is here on the defendant's single exception to that decision.

In view of our final conclusion, which will require a new trial, the evidence will not be discussed in detail. However,

a summary thereof will suffice in order to understand the issue. On March 13, 1951, about 7:45 p.m., plaintiff was struck by defendant's automobile which was being operated, with his consent, by his son. Generally speaking, the accident happened on the westerly side of Killingly street, a public highway in the town of Johnston, at a place where that street runs north and south. The street is not curbed, but between the outside edges of the traveled or hard-surfaced part, where curbs ordinarily would be placed, it measures 36 feet.

The plaintiff testified that she came from an ice cream store located on the westerly side of Killingly street; that a small child was walking on her right and holding her hand; that she, plaintiff, took a few steps straight out from the store; and that she then turned to her right and proceeded southerly on the sidewalk in the direction of her home on Victor avenue, which was the third street to the south and ran into Killingly street from the west. She testified there was a hard asphalt pavement or sidewalk in front of the ice cream store for the full width of the store building, and that it sloped gently from the building front toward and to the westerly edge of the traveled portion of Killingly street.

There was other testimony that such pavement or sidewalk area actually measured 11 feet from the front of the store to the nearest or westerly edge of the street; that at that width it extended for the entire front of the building and continued southerly at least 10 feet in front of two contiguous driveways, which were located next southerly from the ice cream store building and between it and the next house on the same side of Killingly street; and that from such point, as one goes still further southerly in front of that house and the next adjacent vacant lot to Leading street, there is a gravel sidewalk without a curb.

The plaintiff further testified there were no automobiles parked on the sidewalk in front of the store. After coming

out of the store as above described she had walked southerly only a few steps, without going on to the traveled part of Killingly street, when she was struck from the rear by defendant's automobile then being operated by his seventeen-year-old son. It was traveling in the same or southerly direction and she was pushed or dragged some 50 feet before the automobile stopped close to the corner at Leading street and in front of the vacant lot. Much of her testimony was corroborated by physical facts and by another witness who also testified that plaintiff's body was wholly on the dirt or gravel sidewalk with her head pointed toward the edge of the traveled portion of Killingly street.

According to defendant's son, he was operating his father's automobile on an errand and his brother and their boy friend were with him on the front seat. He claimed that he was operating the car at a speed of about 25 miles per hour, with its right side three feet away from the westerly edge of Killingly street; that on the asphalt sidewalk in front of the ice cream store two other automobiles were parked facing each other, leaving a space of two or three feet between their front bumpers; that the sidewalk in front of the store was about five or at most six feet wide; that the nearest sides of the parked cars were on the sidewalk a foot in from the westerly edge of the traveled road; that the place was well lighted from the store windows and a light on the pole across the street; that he did not see plaintiff or the child at any time before he heard a bump; and that the point of contact was on the front bumper about one foot in toward the center from the right-hand side.

Neither the operator's brother nor the friend actually saw plaintiff or the child at any time prior to the accident. The brother testified that the front of their automobile had passed the first parked car and the space between it and the front of the second car, and had also passed the hood of the second or most southerly of the parked cars when he

heard a bump. The friend at first corroborated that testimony but later testified that the contact came when defendant's car was in back of the second car, apparently indicating they had passed both cars.

Notwithstanding these admissions, the operator and his brother testified, and defendant argues, that plaintiff must have walked out fast and suddenly between the two parked automobiles into Killingly street directly into the path of defendant's car; that she was knocked down and remained more or less in front of the ice cream store; and that she was not dragged or pushed. However, the police and other witnesses clearly placed plaintiff's body about 50 feet away from the store and about 13 feet from the corner of Leading street in front of the vacant lot, when she was first moved after the accident.

The trial justice in granting plaintiff's motion for a new trial discussed certain phases of the evidence in a colloquy with the attorneys. He found that on the record there was no reason to explain satisfactorily to him why plaintiff, in order to go to her home on a street which ran off the same side of Killingly street, would have gone so far out into the traveled portion of the street as described by the boys' testimony. He further passed unfavorably on the weight of their testimony and held that in his independent view the evidence clearly supported the claim of plaintiff.

The defendant now apparently contends that the trial justice misconceived the testimony and merely substituted his opinion for that of the jury in a case where the evidence was conflicting and so nearly balanced that the jury's verdict should stand, citing *Anderson* v. *Johnson*, 59 R. I. 241, *Hovas* v. *Cirigliano*, 70 R. I. 227, 236, and *Downes* v. *United Electric Rys.*, 80 R. I. 382, 387. With this in mind we have read the transcript and the colloquy between the trial justice and counsel at the hearing on plaintiff's motion for a new trial. After consideration thereof it appears to us that the trial justice concluded in effect that the credible evi-

dence was not so evenly balanced as would naturally and fairly lead different minds to opposite conclusions, as contended by defendant. In our judgment he applied the rule that he should independently consider the weight of the evidence and the credibility of the witnesses in determining whether the verdict was supported by a preponderance of the evidence and did substantial justice between the parties.

In his decision he expressed the view that much of the testimony of the three boys who were in defendant's car was not entitled to any great weight. Contrary to defendant's contention this conclusion was not reached without reference to the evidence. There are too many inconsistencies and improbabilities in their testimony, especially when considered with other well-established or admitted facts, for us to say on review that the trial justice came to his conclusion arbitrarily. Further he discussed some of the reasons which led him to think that when plaintiff was struck by defendant's car coming from the rear she was walking in the place and manner in which she testified. This conclusion likewise does not lack support from certain testimony in this record which the trial justice believed.

We have held repeatedly that when a trial justice, on hearing a motion for a new trial, has performed his duty by passing his independent judgment on conflicting evidence and the credibility of the witnesses, his decision will not be set aside unless it is clearly wrong. *Aiello* v. *National-Ben Franklin Fire Ins. Co.*, 78 R. I. 114; *Bradley* v. *Brayton,* 61 R. I. 44. In the instant case, in passing on the credibility of the witnesses and in finding that the evidence was not nearly balanced and that the verdict of the jury on this record was not supported by a preponderance of the credible evidence, the trial justice was performing his duty under the rule. Since we cannot say that he misconceived or overlooked any material testimony or that his decision on the conflicting evidence was clearly wrong, such decision should stand.

The defendant's exception is overruled, and the case is remitted to the superior court for a new trial.

*Joseph A. Mackey, Frank J. McGee,* for plaintiff.

*Francis A. Manzi,* for defendant.